**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

FRANCISCO ESCOBAR and JANE DOES 1-1000,
*on behalf of themselves,*
*FLSA Collective Plaintiffs, and the Class,*

Plaintiff,

v.

ST. MARKS 2 BROS PIZZA, INC.
d/b/a 2 BROS PIZZA,
TD 129 SECOND AVE LLC
d/b/a TAQUERIA DIANA,
542 TACO LLC
d/b/a TAQUERIA DIANA,
JOHN DOE CORPORATIONS 1-20,
ELI HALALI,
and OREN HALALI

Defendants.

---

Case No:

**CLASS AND COLLECTIVE ACTION COMPLAINT**

Plaintiff FRANCISCO ESCOBAR ("Plaintiff" or "Plaintiff ESCOBAR") and JANE DOES 1-1000 (collectively, "Plaintiffs"), on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this Class and Collective Action Complaint against Defendants, TD 129 SECOND AVE LLC, 542 TACO LLC, ST. MARKS 2 BROS PIZZA, INC., and JOHN DOE CORPORATIONS 1-20 (collectively, "Corporate Defendants"), and ELI

HALALI, and OREN HALALI (together, the "Individual Defendants", and together with the Corporate Defendants, the "Defendants"), and state as follows:

**INTRODUCTION**

1. Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time shaving, (2) liquidated damages, and (3) attorneys' fees and costs.

2. Plaintiffs allege that, pursuant to the New York Labor Law ("NYLL"), they and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including overtime wages, due to time shaving, (2) unpaid spread of hours premiums, (3) liquidated damages, (4) statutory penalties due to WTPA violations, and (5) attorneys' fees and costs.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

**PARTIES**

5. For all relevant periods, Plaintiff ESCOBAR was a resident of Bronx County, New York.

6. Individual Defendants OREN HALALI and ELI HALALI collectively own a restaurant enterprise, comprised of at least ten (10) locations in New York that have been under the following trade names:

(a) 2 Bros Pizza Bronx, 2460 Grand Concourse, Bronx, NY 10458

(b) 2 Bros Pizza Flatiron, 755 6th Avenue, New York, NY 10010

(c) 2 Bros Pizza East Village, 32 Saint Marks Place, New York, NY 10003

(d) 2 Bros Pizza Port Authority, 542 9th Avenue, New York, NY 10018

(e) 2 Bros Pizza Times Square, 557 8th Avenue, New York, NY 10018

(f) 2 Bros Pizza Midtown, 45 West 46th Street, New York, NY 10036

(g) Taqueria Diana East Village, 129 2nd Avenue, New York, NY 10003

(h) Taqueria Diana Hell's Kitchen, 524 9th Avenue, New York, NY 10018

(i) Taqueria Diana Chelsea, 601 6th Avenue, New York, NY, 10011 (closed)

(j) Taqueria Diana LES, 69 Clinton Street, New York, NY 10002 (closed)

7. Defendants own and operate the Restaurants as a single integrated enterprise. Specifically, the Restaurants are engaged in related activities, share common ownership, and have a common business purpose.

(a) The Restaurants share common ownership through Individual Defendants. *See* **Exhibit A.**

(b) Similarly, all the Restaurants are held out to the public as being co-owned by the Individual Defendants as it is asserted on Defendants' public reports. Moreover, Corporate Defendants share an address for service of process at 519 8th Avenue, New York, NY 10018 on The New York Secretary of State – Division of Corporations site: *See* **Exhibit B.**

(c) The Restaurants are listed in multiple publications, referring to Individual Defendants as co-owners. *See* **Exhibit C.**

(d) All the Restaurants have a centralized Human Resources Department and Administration Department that deals with hiring, firing, payroll, and administering the same wage policies for all the Restaurants' work force. For example, Plaintiff ESCOBAR was often sent to

Defendants' 2 Bros Pizza Location at 32 St. Marks Place, New York, NY 10003 to pick up his paychecks.

(e) The Restaurants' owners frequently visit each Location, and employees are freely transferable among the Restaurants.

(f) Employees were regularly required to transport supplies interchangeably between Defendants' 2 Bros Pizza Locations and Taqueria Diana Locations, in accordance with the directives of central management. For example, Plaintiff ESCOBAR was frequently sent to Defendants' 2 Bros Pizza Location at St. Mark's Place to pick up and drop off supplies.

(g) The Restaurants share a common business purpose, as they are engaged in the food service and catering industry. Moreover, as a significant part of their brand, the Restaurants advertise and sell their goods at a low price point. For example, Defendants center 2 Bros Pizza's brand around their $1.00 slice (later $1.50 slice), and Defendants center Taqueria Diana's brand around their $3.50 tacos and their $10.00 lunch special. *See* **Exhibit D.**

(h) The Restaurants all have the same vendors, including produce suppliers and uniform providers.

8. All Corporate Defendants are organized under the laws of the State of New York and are authorized to do business in the State of New York, with an address for service of process at 519 8th Avenue, New York, NY 10018.

9. Individual Defendants OREN HALALI and ELI HALALI exercise operational control as it relates to all employees including Plaintiffs, FLSA Collective Plaintiffs, and the Class. OREN HALALI and ELI HALALI exercise—and delegate to managers and supervisors—the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those

of Plaintiffs, FLSA Collective Plaintiffs, and the Class. At all times, employees of the Corporate Defendants could complain to OREN HALALI and ELI HALALI indirectly through their managers regarding any of the terms of their employment, and OREN HALALI and ELI HALALI would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. OREN HALALI and ELI HALALI exercised functional control over the business and financial operations of the Corporate Defendants. OREN HALALI and ELI HALALI had the power and authority to supervise and control supervisors of Plaintiffs, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

10. Individual Defendants OREN HALALI and ELI HALALI operate each of the above ten (10) restaurants through JOHN DOE CORPORATIONS 1-20. Each Corporate Defendant is owned by Individual Defendants, who are assigned as the owners and operators of Taqueria Diana and 2 Bros Pizza. While each Corporate Defendant employs the individuals working at each Restaurant location, in reality, all the Restaurants are operated as a single integrated enterprise. Specifically, the Restaurants are engaged in related activities, share common ownership and have a common business purpose.

11. At all relevant times, each of the Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA.

12. At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13. Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including cashiers, food

preparers, cooks, servers, countermen, food runners, bussers, dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

14. At all relevant times, Plaintiffs and the FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay Plaintiffs and FLSA Collective Plaintiffs their proper wages, including their overtime premiums at one and a half times their regular rates for all hours worked over forty (40) in a workweek, due to Defendants' policies of time shaving. Plaintiffs' claims here are essentially the same as those of the other FLSA Collective Plaintiffs.

15. The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS

16. Plaintiffs bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including cashiers, food preparers, cooks, servers, countermen, food runners, bussers, dishwashers, among others) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class" or "Class Members").

17. The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member may also be determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

18. The proposed Class is so numerous such that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class.

19. Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief, that would be sought by each member of the Class in separate actions. All the Class Members were subjected to the same corporate practices by Defendants, as alleged herein, of Defendants' failure to (1) pay all wages, including overtime, due to time shaving; (2) pay all spread of hours premiums for shifts lasting over ten (10) hours; (3) provide proper wage and hour notices, at dates of hiring and annually thereafter, per requirements of the New York Labor Law; and (4) provide proper wage and hour statements, per requirements of the New York Labor Law. Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures of Defendants.

20. Plaintiffs can fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

21. A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

22. Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

23. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a) Whether Defendants employed Plaintiffs and Class Members within the meaning of the New York Labor Law;

b) What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiffs and Class Members;

c) At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and Class Members for their work;

d) Whether Defendants properly notified Plaintiffs and the Class Members of their hourly rates and overtime rates;

e) Whether Defendants paid Plaintiffs and Class Members for all hours they worked;

f) Whether Defendants provided Plaintiffs and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law; and,

g) Whether Defendants provided Plaintiffs and Class Members with proper wage statements with each payment of wages, as required by New York Labor Law.

## STATEMENT OF FACTS

*Plaintiff ESCOBAR's Employment Background*

24. In or around September 2016, Plaintiff ESCOBAR was hired by Defendants to work at their Taqueria Diana's location at 601 6th Avenue, New York, NY 10001. Around June 2017, this restaurant location closed, and Plaintiff was transferred to another Taqueria Diana location at 69 Clinton Street, New York, NY 10002 (now closed). Around June 2019, Plaintiff was transferred again, this time to Taqueria Diana's location at 129 2nd Avenue, New York, NY 10003, owned by TD 129 SECOND AVE LLC. Throughout his employment, Plaintiff would also be sent to work at the Taqueria Diana 9th Avenue location, owned by 542 TACO LLC, when it was understaffed. Plaintiff's employment with Defendants ended in August 2024.

25. Throughout his employment, Plaintiff worked as a cook, cashier, counterman, busser, and server. Since the Restaurants are small, employees were typically required to perform several roles. His duties also included taking orders, packing orders, cooking, and charging customers for their orders at the cash register.

26. Plaintiff's shifts varied depending on which location he worked at. When he worked at the 6th Avenue location, Plaintiff was scheduled by Defendants to work five (5) days per week (Wednesdays through Sundays), from 5:00 a.m. to 5:00 p.m., for a total of sixty (60) hours per week. During his time working at the Clinton Street location, Plaintiff was scheduled to work five (5) days a week (Tuesdays through Saturdays), from 9:00 a.m. to 4:00 p.m., for a total of thirty-five (35) hours per week. At the 2nd Avenue location, Plaintiff was scheduled to work five (5) days

per week (with off days on Monday and Thursday), eight (8) to ten (10) hours per day, for up to fifty (50) hours per week. FLSA Collective Plaintiffs and Class Members worked similar schedules.

27. At all relevant times, Plaintiff ESCOBAR was compensated by Defendants at or slightly above the prevailing New York State minimum hourly wage rate. At the beginning of his employment, he was compensated at a rate of $9.00 per hour. His wage increased over time. At the end of his employment with Defendants, Plaintiff ESCOBAR was paid at a rate of $16.50 per hour. At all relevant times, FLSA Collective Plaintiffs and Class Members were also paid at similar rates.

*Unpaid Wages due to Time Shaving*

28. At all relevant times, Defendants failed to compensate Plaintiffs, FLSA Collective Plaintiffs, and Class Members their proper wages for all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

29. Defendants required Plaintiffs, FLSA Collective Plaintiffs, and Class Members to clock in/out at the beginning and end of their scheduled shifts. However, Defendants regularly required Plaintiffs, FLSA Collective Plaintiffs, and Class Members, to work through their lunch breaks, despite automatically deducting thirty (30) minutes from their pay checks for each day they worked.

30. Defendants' policy and practice of automatically deducting thirty (30) minutes from Plaintiffs, FLSA Collective Plaintiffs, and Class Members is evident from their own records. For instance, Defendants' records show that for the pay periods between October 3, 2022 to October 23, 2022, Plaintiff ESCOBAR was not paid for the meal breaks he worked through. *See* **Exhibit E.**

31. Defendants required Plaintiffs, FLSA Collective Plaintiffs, and Class Members to work fifteen (15) minutes off the clock before their scheduled shifts, to prepare the restaurant for opening. At all relevant times, Plaintiffs, FLSA Collective Plaintiffs, and Class Members were not allowed to clock in before their scheduled shifts, and thus were not compensated for any of this pre-shift work.

32. At all relevant times, FLSA Collective Plaintiffs and Class Members were similarly subjected to the same time shaving policies and required by Defendants to engage in unpaid labor on a daily basis without any compensation.

33. At all relevant times, Defendants knowingly and willfully operated their business with a policy of failing to pay wages to Plaintiffs, FLSA Collective Plaintiffs, and Class Members for all hours they worked, due to Defendants' policy of time shaving, in violation of the FLSA and the NYLL.

*Unpaid Spread of Hours Premiums*

34. At all relevant times, Defendants failed to compensate Plaintiffs and Class Members with spread of hours premiums for all shifts worked in excess of ten (10) hours.

35. When Plaintiff ESCOBAR worked at Taqueria Diana's 6th Avenue location, all shifts he worked lasted over twelve (12) hours. Moreover, when Plaintiff ESCOBAR worked at Taqueria Diana's location on 2nd Avenue, he worked over ten (10) hours for at least two (2) of his shifts each week. However, Defendants never compensated Plaintiff ESCOBAR with spread of hours premiums for any of these shifts, in violation of the NYLL. At all relevant times, Class Members similarly worked shifts in excess of ten (10) hours and were never paid spread of hours premiums for their shifts lasting over ten (10) hours.

*Claims of WTPA Violations*

36. At all relevant times, Plaintiffs and Class Members never received a wage notice from Defendants.

37. At all relevant times, Plaintiffs and Class Members did not receive proper wage statements from Defendants.

38. In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiffs and Class Members at the beginning of their employment with Defendants.

39. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, [the] [p]laintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs*., 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

40. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and Class Members. Defendants' conduct actually harmed Plaintiffs and Class Members. Defendants'

failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate Plaintiffs' and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

41. Had Defendants provided to Plaintiffs and Class Members proper wage statements, as required by law, Defendants would have had to either (a) increase the wages to reflect their unpaid wages or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the premiums that the employee actually earned. Either possibility would have allowed Plaintiffs and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

42. The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiffs and Class Members. This delayed payment caused Plaintiffs and Class Members to struggle to pay bills and other debts.

43. The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, at *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income,

based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the Plaintiffs earned $ 133,086 as reflected on his final year paystub and W-2").[1]

44. The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, at *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (*quoting* Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co*., 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

45. "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y., LLC*, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

46. Here, it is clear that Defendants' failure to provide Plaintiffs and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the time shaved hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiffs and Class Members. That, in turn, would have increased Plaintiffs' and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiffs with Article III standing.

47. Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he Plaintiffs' real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

48. The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiffs and other employees rather than merely misreporting their income.

But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

49. Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

50. The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

*Calderon*, 999 F.2d 1101, 1106 (7th Cir. 1993).

51. Here, the problem is not merely challenging but insurmountable. Plaintiffs and Class Members cannot even attempt to have their earnings report corrected because Defendants

*did* report what they actually paid Plaintiffs and Class Members. The problem, rather, is that Plaintiffs and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiffs were irreversibly injured with respect to their social security benefits as soon as Defendants sent their W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

52. Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiffs and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

53. Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs, FLSA Collective Plaintiffs, and Class Members in this litigation, and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

54. Plaintiffs reallege and incorporate the above allegations as if fully stated herein.

55. At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

56. At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

57. At all relevant times, Defendants had a policy and practice that failed to pay Plaintiffs and FLSA Collective Plaintiffs their properly owed wages for all hours worked, due to a policy of time shaving.

58. Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

59. Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their proper wages, including their proper wages and overtime premiums, when Defendants knew or should have known such was due.

60. Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

61. As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

62. Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs suffered damages in an amount not presently ascertainable for unpaid wages, including unpaid overtime wages, and liquidated damages.

63. Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## VIOLATION OF THE NEW YORK LABOR LAW

64. Plaintiffs reallege and incorporate the above allegations as if fully stated herein.

65. At all relevant times, Plaintiffs and Class Members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

66. Defendants willfully violated Plaintiffs' and Class Members' rights by subjecting them to a policy of failing to pay wages for all hours worked due to time shaving.

67. Defendants willfully violated Plaintiffs' and Class Members' rights by subjecting them to a policy of failing to pay them with spread of hours premiums for all shifts worked in excess of ten (10) hours.

68. Defendants failed to properly notify employees of their hourly pay rate and overtime rate, in direct violation of the New York Labor Law.

69. Defendants failed to provide Plaintiffs and Class Members with proper wage and hour notices, at their dates of hiring and annually, per requirements of the New York Labor Law.

70. Defendants failed to provide Plaintiffs and Class Members with proper wage statements with every payment as required by New York Labor Law § 195(3).

71. Due to the Defendants' New York Labor Law violations, Plaintiffs and Class members are entitled to recover from Defendants: their unpaid wages, unpaid overtime wages and premiums, liquidated damages, statutory penalties, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves, FLSA Collective Plaintiffs, and Class Members, respectfully request that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime wages and premiums, as a result of time shaving, due under the FLSA and the NYLL;

d. An award of unpaid spread of hours premiums, due under the NYLL;

e. An award of statutory penalties as a result of Defendants' failure to comply with New York Labor Law wage notice and wage statement requirements;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to 29 U.S.C. § 216;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay wages pursuant to the NYLL;

h. Restitution and disgorgement of all amounts obtained by Defendants as a result of their misconduct, together with interest thereon from the date of payment;

i. An award of pre-judgment and post-judgment interests, costs, and expenses of this action together with reasonable attorneys' and experts' fees and statutory penalties;

j. Designation of this action as a collective action pursuant to 29 U.S.C. § 216(b);

k. Designation of Plaintiff ESCOBAR as Representative of the FLSA Collective Plaintiffs;

l. Designation of this action as a class action pursuant to F.R.C.P. 23;

m. Designation of Plaintiff ESCOBAR as Representative of the Class;

n. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: September 24, 2025
New York, New York

Respectfully submitted,

By: /s/ *C.K. Lee*

C.K. Lee, Esq. (CL 4086)
**LEE LITIGATION GROUP, PLLC**
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*